FILED - WESTERN DIVISION
CLERK, U.S. DISTRICT COURT

JUL 15 2008

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| RALPH CARL PALMER,<br><br>                    Petitioner,<br><br>        v.<br><br>VICTOR M. ALMAGER, Warden,<br><br>                    Respondent. | No.  CV 06-7717-R (AGR)<br><br>ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION |

Pursuant 28 U.S.C. § 636, the Court has reviewed the entire file de novo, including the magistrate judge's Report and Recommendation.  The Court agrees with the recommendation of the magistrate judge.

IT IS ORDERED that Judgment be entered denying the Petition and dismissing this action with prejudice.

DATED:  _July 14, 2008_

_____
MANUEL L. REAL
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

RALPH CARL PALMER,

    Petitioner,

       v.

VICTOR M. ALMAGER, Warden,

    Respondent.

NO. CV 06-7717-R (AGR)

REPORT AND
RECOMMENDATION OF UNITED
STATES MAGISTRATE JUDGE

     The Court submits this Report and Recommendation to the Honorable Manuel L. Real, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order No. 05-07 of the United States District Court for the Central District of California.  For the reasons set forth below, the Magistrate Judge recommends the Petition for  Writ of Habeas Corpus be denied.

///

///

///

///

///

///

# I.

## SUMMARY OF PROCEEDINGS

On January 15, 2003, a Los Angeles County jury convicted Petitioner of attempted premeditated murder of a police officer (Count 1); assault of a peace officer with a semiautomatic firearm (Count 2); and three counts of second degree robbery (Counts 3-5); the jury also found true various firearm enhancements. (Lodged Document ("LD") 1 at 274-80.)  On September 18, 2003, Petitioner was sentenced to 155 years to life in prison under California's Three Strikes Law. (*Id.* at 471.)

On October 31, 2005, the California Court of Appeal affirmed the conviction. (LD 7.)  On February 22, 2006, the California Supreme Court denied review "without prejudice to any relief to which defendant might be entitled after the United States Supreme Court determines in *Cunningham v. California*, No. 05-6551, the effect of *Blakely v. Washington* (2004) 542 U.S. 296 and *United States v. Booker* (2005) 543 U.S. 220, on California law." (LD 11.)

On December 5, 2006, Petitioner filed a Petition for Writ of Habeas Corpus by a Person in State Custody in this Court in which he raised four grounds:  (1) two constitutional violations in the imposition of the firearm enhancement in Count 1; (2) instructional error; (3) ineffective assistance of counsel; and (4) a *Blakely* violation in the imposition of consecutive sentences. (Petition at 5-6.)  On May 7, 2007, Respondent filed an answer, admitting timeliness and exhaustion. (Answer at 2.)  On October 15, 2007, Petitioner filed a reply.

This matter was taken under submission and is now ready for decision.

# II.

## STATEMENT OF FACTS

Below are the facts set forth in the California Court of Appeal decision on direct review.  To the extent an evaluation of Petitioner's claims for relief depends

///

on an examination of the record, the Court has made an independent evaluation of the record specific to Petitioner's claims for relief.

On the evening of December 23, 2001, Palmer robbed three employees at a La Verne Stein Mart store. Palmer, who was wearing a beanie with a star embroidered on the front, and a bandanna covering his face from the nose down, entered the store carrying a semiautomatic firearm. He approached cashier Dustin Figueroa, who was counting the money in the register, pointed the gun at Figueroa, and told him to leave the register open. Palmer took bills from the register and placed them into a black pouch he was carrying.

Palmer then approached cashier Sara Guillen. While holding the gun, he told her to "open [her] till." She backed away and allowed Palmer to remove money from the register. Palmer took only bills, not coins.

Assistant Manager Jill Cochran was at the front of the store when Palmer entered. Alarmed by the fact he was wearing a bandanna over the lower half of his face, she headed to the customer service desk to telephone police. Palmer displayed the gun and told her not to move.

After removing money from the two registers, Palmer departed. Cochran telephoned police.

La Verne police officer Michael Burks, who was on patrol without a partner, happened to be in the Stein Mart parking lot when Palmer hastily departed from the store. Palmer was no longer wearing the bandanna over his face. When Palmer saw Burks, Palmer entered a dark-colored Mazda. As Palmer was backing out, Burks received a radio call regarding the robbery. Because the description of the robber matched Palmer's appearance, Burks drove behind the Mazda and activated the patrol car's lights. Palmer "almost instantaneously" stopped the Mazda. As Burks was exiting his patrol car, Palmer suddenly stepped out of the driver's seat, swiveled

around with the gun, and fired a shot at Burks. Burks dove behind his open car door, pivoting on and breaking his ankle in the process.FN4 A bullet hit the patrol vehicle's driver's side mirror. Burks fired approximately 10 shots at Palmer, but struck the pavement because he was unable to aim due to his ankle injury. Palmer drove from the scene. Burks notified a police dispatcher of a portion of Palmer's license plate.

FN4. Burks's injury required that he wear a cast for three to four months. At the time of trial, he was still suffering swelling and bruising in his foot as a result of the break.

Palmer sped down Foothill Boulevard, committing various traffic violations and accelerating to speeds up to 100 miles per hour. Travis Bauer, an off-duty police officer for the City of Covina, observed Palmer's driving. He followed Palmer and telephoned police. Eventually Palmer crashed into a chain link fence. Bauer approached Palmer's vehicle to determine whether anyone was hurt. Palmer emerged from the driver's side and fled, eluding authorities.

The Mazda was determined to belong to Palmer's girlfriend, Sonja Edwards. Edwards reported the car as stolen approximately one hour after the crash. In the Mazda, officers discovered, among other things, an employee identification card bearing Palmer's name and photograph, and a roll of film that, when developed, contained a photograph of Palmer. Eight hundred dollars, the same amount taken from the Stein Mart store, was also discovered in the car. The first four digits of the vehicle's license plate corresponded to those reported to the dispatcher by Officer Burks. The vehicle's airbags had deployed during the crash, and Palmer was the "major donor" of DNA found on the driver's side airbag, suggesting he was the person who was struck by the airbag during the collision. Edwards told

1   police that Palmer owned a white beanie with a star logo embroidered on

2   the front.

3   (LD 7 at 3-5.)

4   ### III.

5   ### **STANDARD OF REVIEW**

6   A federal court may not grant a petition for writ of habeas corpus by a

7   person in state custody with respect to any claim that was adjudicated on the

8   merits in state court unless it (1) "resulted in a decision that was contrary to, or

9   involved an unreasonable application of, clearly established Federal law, as

10  determined by the Supreme Court of the United States"; or (2) "resulted in a

11  decision that was based on an unreasonable determination of the facts in light of

12  the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d);

13  *Woodford v. Visciotti*, 537 U.S. 19, 21, 123 S. Ct. 357, 154 L. Ed. 2d 279 (2002)

14  (per curiam).

15  "'[C]learly established Federal law' . . . is the governing legal principle or

16  principles set forth by the Supreme Court at the time the state court rendered its

17  decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 155 L. Ed.

18  2d 144 (2003).  A state court's decision is "contrary to" clearly established

19  Federal law if (1) it applies a rule that contradicts governing Supreme Court law;

20  or (2) it "confronts a set of facts . . . materially indistinguishable" from a decision

21  of the Supreme Court but reaches a different result. *Early v. Packer*, 537 U.S. 3,

22  8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002).  A state court's decision cannot be

23  contrary to clearly established Federal law if there is a "lack of holdings from" the

24  Supreme Court on a particular issue. *Carey v. Musladin*, 549 U.S. 70, 127 S. Ct.

25  649, 654, 166 L. Ed. 2d 482 (2006).

26  Under the "unreasonable application prong" of section 2254(d)(1), a federal

27  court may grant habeas relief "based on the application of a governing legal

28  principle to a set of facts different from those of the case in which the principle

5

was announced." *Lockyer*, 538 U.S. at 76; *see also Woodford*, 537 U.S. at 24-26 (state court decision "involves an unreasonable application" of clearly established federal law if it identifies the correct governing Supreme Court law but unreasonably applies the law to the facts).

A state court's decision "involves an unreasonable application of [Supreme Court] precedent if the state court either unreasonably extends a legal principle . . . to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply." *Williams v. Taylor*, 529 U.S. 362, 407, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).

"In order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous." *Wiggins v. Smith*, 539 U.S. 510, 520-21, 123 S. Ct. 2527, 156 L. Ed. 2d 471 (2003) (citation omitted). "The state court's application must have been 'objectively unreasonable.'" *Id.* (citation omitted); *see also Clark v. Murphy*, 331 F.3d 1062, 1068 (9th Cir.), *cert. denied*, 540 U.S. 968 (2003).

"Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2)." *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003).

In applying these standards, this Court looks to the last reasoned State court decision. *Davis v. Grigas*, 443 F.3d 1155, 1158 (9th Cir. 2006). To the extent no such reasoned opinion exists, as when a state court rejected a claim in an unreasoned order, this Court must conduct an independent review to determine whether the decisions were contrary to, or involved an unreasonable application of, "clearly established" Supreme Court precedent. *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000). If the state court declined to decide a federal

constitutional claim on the merits, this Court must consider that claim under a *de novo* standard of review rather than the more deferential "independent review" of unexplained decisions on the merits authorized by *Delgado*. *Lewis v. Mayle*, 391 F.3d 989, 996 (9th Cir. 2004) (standard of *de novo* review applicable to claim state court did not reach on the merits).

**IV.**

**DISCUSSION**

**A.    GROUND ONE: Application of the Firearm Enhancement**

With respect to the attempted murder of Burks, the jury also found true that Petitioner personally discharged a firearm and proximately caused great bodily injury to Burks pursuant to Cal. Penal Code § 12022.53(d).[1]  (LD 1 at 277.) Petitioner argues (1) there was insufficient evidence to support the jury's finding; and (2) he "was denied his federal due process rights because he had no fair warning that the penal code section would be applied so expansively."  (Petition at 5(A).)

**1.    Insufficiency of the Evidence**

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970).  "[T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be . . . to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318, 99 S. Ct. 2781, 61 L. Ed 2d 560 (1979).  This inquiry does not require a court to "ask itself whether it

---

[1]  At the time Petitioner committed the crimes, this subsection provided that "any person who is convicted of a [specified] felony . . . and who in the commission of that felony intentionally and personally discharged a firearm and proximately caused great bodily injury . . . to any person . . . shall be punished by a term of imprisonment of 25 years to life."  (LD 7 at 8 n.5.)

1   believes that the evidence at the trial established guilt beyond a reasonable

2   doubt" [but] whether, after viewing the evidence in the light most favorable to the

3   prosecution, any rational trier of fact could have found the essential elements of

4   the crime beyond a reasonable doubt." *Id.* at 318-19 (citations omitted).  A

5   reviewing court must give "full play to the responsibility of the trier of fact fairly to

6   resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable

7   inferences from basic facts to ultimate facts." *Id.* at 319.

8        Petitioner argues the evidence was insufficient to establish that the

9   discharge proximately caused Burks's injury.  The Court of Appeal, whose

10  decision was the last reasoned decision under *Davis*, applied the correct legal

11  standard. (LD 7 at 13.)  The court correctly understood the crux of Petitioner's

12  argument to be that there was insufficient evidence of proximate cause because

13  "Burks dove for cover when Palmer *pointed* the gun at Burks, not when Palmer

14  actually *discharged* the gun." (*Id.* at 12-13; Reply at 7.)  The court first concluded

15  that "great bodily injury" may be proximately caused by the discharge of a firearm

16  within the meaning of Cal. Penal Code § 12022.53(d) even if the great bodily

17  injury does not consist of a gunshot but rather injury suffered when attempting to

18  avoid being shot.  (LD 7 at 9-12.)

19       The Court of Appeal then concluded that there was sufficient evidence that

20  Burks's injury was proximately caused by Petitioner's discharge of the gun, as

21  opposed to a distinct act of pointing a gun. (LD 7 at 13.) "The entire incident

22  transpired quickly; *only a 'second or two' elapsed from the time Burks activated*

23  *his patrol vehicle's lights and the shooting.*" (*Id.* (emphasis in original).)

24  "[Petitioner] exited his vehicle and immediately turned, pointed the gun, and fired,

25  all in one essentially seamless motion." (*Id.* at 14.)

26       The Court of Appeal's decision is not an unreasonable determination of the

27  facts.  Burks was the only witness to the shooting other than Petitioner, who did

28  not testify.  Burks testified he pursued Petitioner (Burks in his patrol car and

Petitioner in his car). (LD 3 at 651.) Burks turned on his rotating and flashing lights, and Petitioner stopped his car. (*Id.* at 651-54.) Both men got out of their cars. (*Id.* at 654-57, 702.) Petitioner had a gun in his hand, raised it, and pointed it at Burks's chest. (*Id.* at 657) Time "slow[ed] down" for Burks. (*Id.* at 658-59.) Burks "dove to the left" and broke his ankle. (*Id.* at 662.) As Burks was ducking for cover, he "saw the flash" of Petitioner's gun at the same time as Burks' ankle broke. (*Id.* at 662-64, 705.) Burks thought he had been shot and later realized he had not. (*Id.* at 664, 705.) The time between Burks turning on his lights and Petitioner's gunshot was approximately two seconds. (*Id.* at 666-67.) Burks testified that when he activates his lights, a video camera with audio turns on after a second or two delay. (*Id.* at 665, 698.) The videotape starts after Petitioner fired his gun. (*Id.* at 666.) On cross-examination, Burks testified that he was positive Petitioner did not shoot when Burks was still inside the car. (*Id.* at 704.)

Petitioner argues that the state court's conclusion "raises a question of whether the 'discharge' would have been credited for proximate causation if the gun-pointing had lasted for some period of time." (Reply at 7.) But the state court specifically addressed Petitioner's question: "We do not disagree with Palmer that, had he pointed the gun at Burks for some significant length of time before firing it, and Burks's injury occurred during that period, before the gunshot, the proximate cause requirement would not be established." (LD 7 at 14.) The court found that "[t]here was no evidence that Palmer held Burks at bay by pointing the gun at him for a distinct period of time without firing." (*Id.* at 13.)

Petitioner has presented no "clear and convincing evidence" to rebut the factual determinations of the Court of Appeal. *See* 28 U.S.C. § 2254(e)(1); *Miller-El*, 537 U.S. at 340 ("Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary"). Nor has Petitioner shown that no rational juror could have found that he personally discharged a firearm

1    and proximately caused great bodily injury to Burks beyond a reasonable doubt.

2    *Jackson*, 443 U.S. at 318-19.  Petitioner's claim fails.

3                    **2.    Due Process**

4           A claim involving only the application and/or interpretation of California law

5    is not cognizable on federal habeas review.  *See* 28 U.S.C. § 2254(a);  *Bradshaw*

6    *v. Richey*, 546 U.S. 74, 76, 126 S. Ct. 602, 163 L. Ed. 2d 407 (2005) (per curiam)

7    ("[A] state court's interpretation of state law, including one announced on direct

8    appeal of the challenged conviction, binds a federal court sitting in habeas

9    corpus."); *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S. Ct. 475, 116 L. Ed. 2d

10   385 (1991) ("it is not the province of a federal habeas court to reexamine

11   state-court determinations on state-law questions"); *Smith v. Phillips*, 455 U.S.

12   209, 221, 102 S. Ct. 940, 71 L. Ed. 2d 78 (1982) ("Federal courts hold no

13   supervisory authority over state judicial proceedings and may intervene only to

14   correct wrongs of constitutional dimension."); *Langford v. Day*, 110 F.3d 1380,

15   1389 (9th Cir.) ("We accept a state court's interpretation of state law, . . . and

16   alleged errors in the application of state law are not cognizable in federal habeas

17   corpus."), *cert. denied*, 522 U.S. 881 (1997).

18          In his reply, Petitioner cites to *Bouie v. City of Columbia*, 378 U.S. 347, 84

19   S. Ct. 1697, 12 L. Ed. 2d 894 (1964), and *Lanzetta v. New Jersey*, 306 U.S. 451,

20   453, 59 S. Ct. 618, 83 L. Ed. 888 (1939), in support of his argument that he had a

21   due process right to "fair warning" of the "expansive[]" application of the

22   enhancement.  (Reply at 8.)  Petitioner did not cite these cases to the Court of

23   Appeal.  (*See* LD 4, 6.)  Nonetheless, the Court of Appeal did address the issue

24   and concluded, not unreasonably, that "the plain language of the statute was

25   sufficient to put Palmer on notice that his conduct of shooting at Officer Burks,

26   under the circumstances here, fell within section 12022.53, subdivision (d)'s

27   ambit."  (LD 7 at 15 n.7.)  In a single paragraph and without analysis, Petitioner

28   raised the issue and cited these cases before the California Supreme Court (*see*

1   LD 10 at 15).  Because the Supreme Court denied review in an unreasoned

2   order, the Court has conducted an independent review to determine whether the

3   state decision was contrary to, or involved an unreasonable application of,

4   "clearly established" Supreme Court precedent.  *Delgado*, 223 F.3d at 982.

5       In *Bouie*, two Negro college students were convicted of trespass when they

6   sat down in a restaurant booth at Eckerd's Drug Store in Columbia, South

7   Carolina, on March 14, 1960.  *Bouie*, 378 U.S. at 348-49.  The trespass statute

8   stated that an entry on the land "after notice" was prohibited.  *Id.* at 349 n.1.  The

9   court found that the defendants' due process rights were violated because

10  although they remained in the restaurant after being asked to leave, they did not

11  have "notice" before entering the restaurant.  The court stated that "a criminal

12  statute [must] give fair warning of the conduct which it prohibits."  *Id.* at 350.  The

13  court noted that a statute cannot have "terms so vague that men of common

14  intelligence must necessarily guess at its meaning and differ as to its application."

15  *Id.* at 351 (quoting from *Lanzetta*,[2] 306 U.S. at 453).

16      Here, the statute provides fair notice of what conduct is prohibited and is

17  not void for vagueness.  Petitioner's reliance on *Bouie* and *Lanzetta* is misplaced.

18  Petitioner does not explain in what way the enhancement statute is so vague or

19  uncertain as to deny due process.  *See James v. Borg*, 24 F.3d 20, 26 (9th Cir.)

20  ("Conclusory allegations which are not supported by a statement of specific facts

21  do not warrant habeas relief.") (citation omitted), *cert. denied*, 513 U.S. 935

22  (1994).  His principal argument is that discharging a firearm must mean more

23  than pointing the gun.  But that simply restates Petitioner's failed insufficiency-of-

24  the-evidence argument that is addressed and rejected above.  To the extent

25  Petitioner argues he did not have fair notice that the statute applied to injury other

26  _____

27      [2] In *Lanzetta*, the court found that a New Jersey statute declaring an
    individual to be a "gangster" under certain conditions and then punishing the
28  individual was so uncertain as to deny defendants due process.  *Lanzetta*, 306
    U.S. at 457-58.

1    than a gunshot wound, Petitioner's argument fails.  The plain language of the

2    statute states "great bodily injury" and nowhere specifies gunshot wounds.

3          **B.**     **GROUND TWO: Instructional Error**

4         "The only question . . . is 'whether [a jury] instruction by itself so infected

5    the entire trial that the resulting conviction violates due process." *Estelle*, 502

6    U.S. at 72 (quoting from *Cupp v. Naughten*, 414 U.S. 141, 147, 94 S. Ct. 396, 38

7    L. Ed. 2d 368 (1973)).  "[I]t must be established not merely that the instruction is

8    undesirable, erroneous, or even 'universally condemned,' but that it violated

9    some [constitutional right].'" *Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 94 S.

10    Ct. 1868, 40 L. Ed. 2d 431 (1974).  "[W]e 'have defined the category of infractions

11    that violate "fundamental fairness" very narrowly.'" *Estelle*, 502 U.S. at 72-73

12    (quoting from *Dowling v. United States*, 493 U.S. 342, 352, 110 S. Ct. 668, 107 L.

13    Ed. 2d 708 (1990)).

14         Before trial started, the prosecution asked the court to admit evidence of

15    "one or all of the defendant's felony priors as well as his parole status to show

16    either motive or consciousness of guilt."  (LD 3 at 4-5.)  The prosecutor argued

17    that Petitioner's potential three-strike status constituted evidence of his intent to

18    kill Burks "and eliminate the witness and the threat." (*Id.* at 6.)  The trial court

19    ruled that the prosecution could not introduce evidence of Petitioner's parole

20    status on the issue of intent to kill because it was too "speculative."  The court

21    also ruled that admission of all of Petitioner's priors was too prejudicial, but that

22    one prior could be introduced to show intent. (*Id.* at 12-13.)

23         Detective Surgent, the lead investigator in the case, testified that when they

24    were investigating Petitioner's background, they learned, among other things, that

25    "he had recently been released from prison for a robbery conviction." (*Id.* at

26    1243.)  Defense counsel immediately requested a sidebar and asked for a

27    mistrial, arguing that Surgent's statement was "a back-door way of saying

28    [Petitioner was] on parole," which violated the trial court's ruling. (*Id.* at 1244.)

1   The court noted that the word "parole" wasn't mentioned, and that the jurors may

2   not have necessarily inferred that Petitioner was on parole.  (*Id.* at 1248.)

3   Nonetheless, the court concluded the sidebar and instructed the jury as follows:

4            In the law there are a number of different classifications of evidence.

5            Some evidence is admissible for all kinds of different reasons and

6            some are admissible for very limited purposes.  [¶]  Now, the officer's

7            last statement is admissible, but it's only admissible for the limited

8            purpose of showing the defendant's intent relating to Counts 1

9            [attempted murder] and 2 [assault].  [¶]  You are not to consider that

10           information for any purpose as to Counts 3, 4 and 5 [robberies] or for

11           any other purpose other than as it bears on whether the defendant

12           had the specific intents required in Count 1 and Count 2.

13   (*Id.* at 1249.)

14           Petitioner argues that the court's limiting instruction authorized the jury to

15   draw an inference that the evidence of his 1992 conviction made it "more

16   probable Petitioner had the intent to kill."  (Reply at 9.)

17           The Court of Appeal assumed arguendo that the limiting instruction

18   implicitly suggested a permissive inference.  (LD 7 at 34.)  "A permissive

19   inference suggests to the jury a possible conclusion to be drawn if the State

20   proves predicate facts, but does not require the jury to draw that conclusion."

21   *Francis v. Franklin*, 471 U.S. 307, 314, 105 S. Ct. 1965, 85 L. Ed. 2d 344 (1985).

22   A permissive inference does not shift the burden of proof.  *County Court of Ulster*

23   *County v. Allen*, 442 U.S. 140, 157, 99 S. Ct. 2213, 60 L. Ed. 2d 777 (1979).  The

24   Court of Appeal, whose decision is the last reasoned decision under *Davis*,

25   applied the correct legal standard.  The Court of Appeal concluded that "a

26   permissive inference violates the Due Process Clause only if the suggested

27   conclusion is not one that reason and common sense justify in light of the proven

28   facts before the jury."  (LD 7 at 34 (citation and internal quotation marks

                                              13

1    omitted).)[3]  As the Supreme Court has explained, "only in that situation is there

2    any risk that an explanation of the permissible inference to a jury, or its use by a

3    jury, has caused the presumptively rational factfinder to make an erroneous

4    factual determination."  *Ulster County*, 442 U.S. at 158.

5        The Court of Appeal concluded "that the fact a defendant had committed

6    other crimes or was on parole, motivating his attempt to escape from police to

7    avoid return to prison, is admissible to show intent to kill."  (LD 7 at 34 (citing

8    cases)); *see also id.* at 28 ("[W]here the victims of murders were police officers

9    who had stopped the defendants for investigation or to arrest them, evidence that

10   the defendants had previously committed serious crimes has always been held

11   properly admitted to prove that the motive for the killing was to prevent arrest and

12   punishment for the crimes they had committed") (citation omitted).)  Accordingly,

13   "reason and common sense allow an inference of intent from the evidence, and

14   the inference was not impermissible in light of the proven facts before the jury."

15   (*Id.* at 34.) (citation omitted)  The Court of Appeal went on to conclude that even if

16   the instruction was erroneous, any error would be harmless because the

17   prosecution's evidence was strong and there was no reasonable probability that

18   Petitioner would have obtained a more favorable result had the evidence been

19   excluded and the instruction not given.  (*Id.* at 35.)

20        Petitioner states, without any support, that there is no "rational connection"

21   between his prior conviction for robbery and the intent to kill.  Petitioner has failed

22   to show that the state court's decision was contrary to, or an unreasonable

23   application of, clearly established federal law and was an unreasonable

24   determination of the facts.  Petitioner's claim fails.

25       **C.**     **GROUND THREE: <u>Ineffective Assistance of Counsel</u>**

26       To succeed on a claim of ineffective assistance of trial counsel, Petitioner

27

28         [3]  The quotation is from *Francis*, 471 U.S. at 314-15.

1 │ must demonstrate that his attorney's performance was deficient and that the
2 │ deficient performance prejudiced the defense. *Strickland v. Washington*, 466
3 │ U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *Wiggins*, 539 U.S. at
4 │ 521. The petitioner bears the burden of establishing both components. *Williams*,
5 │ 529 U.S. at 390-91; *Smith v. Robbins*, 528 U.S. 259, 285-86, 120 S. Ct. 746, 145
6 │ L. Ed. 2d 756 (2000). "Deficient performance is performance which is objectively
7 │ unreasonable under prevailing professional norms." *Hughes v. Borg*, 898 F.2d
8 │ 695, 702 (9th Cir. 1990) (citing *Strickland*, 466 U.S. at 688). Prejudice "focuses
9 │ on the question whether counsel's deficient performance renders the . . .
10 │ proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.
11 │ Ct. 838, 122 L. Ed. 2d 180 (1993); *Williams*, 529 U.S. at 393 n. 17. The Court
12 │ need not address both components if Petitioner makes an insufficient showing on
13 │ one. *Strickland*, 466 U.S. at 697.

14 │ During the cross-examination of Surgent, defense counsel attempted to
15 │ show that the police investigation was inadequate. For example, counsel elicited
16 │ testimony that gloves were not sent for DNA testing. (LD 3 at 1255-56.) He also
17 │ elicited testimony that the gun shell casing was not fingerprinted. (*Id.* at 1256.)
18 │ During redirect, the following colloquy occurred:

19 │ Q   By the way, as you're gathering this evidence up in this case, do you
20 │     know who committed this crime? [¶] Do you know who committed it as
21 │     you're conducting this investigation?

22 │ A   Well, towards the latter part of my investigation, yes.

23 │ Q   Well, what I'm talking about when the first initial stages where you're
24 │     starting out with, you know, you've got that I.D. in the car, and you're
25 │     looking at Mr. Palmer, you talked to Sonja, and at this point you just
26 │     don't know what you've got; is that correct?

27 │ A   No.

28 │

1      Q   You start putting together six-packs, you show them to witnesses, and

2          they start making identifications; is that correct?

3      A   Correct.

4  (*Id.* at 1262-63.)

5       Petitioner argues that his counsel was ineffective for failing to move for a

6  mistrial in response to the above testimony, as the investigator impermissibly

7  opined that Petitioner was the perpetrator.  (Petition at 6(A).)

8       The Court of Appeal, whose decision is the last reasoned decision under

9  *Davis*, acknowledged that a witness is not permitted to express an opinion as to

10  the defendant's guilt.  (LD 7 at 37); *see United States v. Espinosa*, 827 F.2d 604,

11  612 (9th Cir. 1987).  However, the court found that "admission of the challenged

12  portion of the officer's testimony was harmless" and "any mistrial motion would

13  likely have been denied." (*Id.* at 38.)  "The most [Surgent's] statement would

14  have conveyed to the jury was the wholly unremarkable fact that, as the

15  investigation progressed, Detective Surgent believed he had identified the

16  suspect responsible for the crimes.  This fact could hardly have come as a

17  surprise to the jury." (*Id.*)

18       For these reasons, the Court of Appeal rejected Petitioner's ineffective

19  assistance of counsel claim.  Counsel could not be found deficient for failing to

20  make a meritless objection or file a futile motion. (*Id.*)  Further, Petitioner could

21  not establish prejudice. (*Id.*)

22       The Court of Appeal's decision was not contrary to, or an unreasonable

23  application of, clearly established federal law and was not an unreasonable

24  determination of the facts.  "Counsel's failure to make a futile motion does not

25  constitute ineffective assistance of counsel." *Borg*, 24 F.3d at 27 (citation

26  omitted).  In addition, Petitioner cannot show a "reasonable probability that, but

27  for counsel's unprofessional errors, the result of the proceeding would have been

28  different." *Strickland*, 466 U.S. at 694.

As the Court of Appeal noted, the evidence of Petitioner's guilt was strong. (LD 7 at 32.) Burks saw Petitioner run out of the store directly after the commission of the robberies. (LD 3 at 645.) He identified Petitioner in court. (*Id.* at 646.) Burks pursued Petitioner and Petitioner shot at him. (*Id.* at 657-58.) Burks radioed that Petitioner was leaving the parking lot and communicated a partial license plate. (*Id.* at 668-69.) Burks identified Petitioner in a photographic lineup, saying at the time that he was 85% sure of his identification. (*Id.* at 682.) He identified him at a live line-up. (*Id.* at 688.)

Bauer picked up the trail of Petitioner's car when Petitioner ran a red light. (*Id.* at 716.) Because he was off-duty and didn't have a radio, he was unaware of Burks's earlier radio communication. (*Id.* at 719-20.) Bauer followed Petitioner. (*Id.* at 720.) Petitioner was traveling at about 100 miles per hour. (*Id.* at 721.) Petitioner's car crashed into a fence. (*Id.* at 724.) Bauer saw Petitioner get out of his car and run away. (*Id.* at 731.)

Detective Smith arrived at the scene of the crash. He discovered a bag in Petitioner's car with two cloth gloves and $690 in cash in the bag. (*Id.* at 905.) He found an additional $110 in cash on the driver's side floorboard.[4] (*Id.* at 907-08.) Smith found an employee ID badge for Ralph Palmer (Petitioner) in the car. (*Id.* at 917, 953-54.) The car belonged to Sonja Edwards, Petitioner's girlfriend. (*Id.* at 958, 975.) Based on a DNA examination of the air bag that deployed after the crash, Petitioner was the "primary donor." (*Id.* at 1086.)

Petitioner argues that the eyewitness testimony was weak. Petitioner cites to the testimony of Sara Guillen. (*Id.* at 419-20.) Guillen identified Petitioner in a photographic line-up. (*Id.* at 419.) She identified him in court as being the person in the line-up. (*Id.*) She also independently stated she recognized him from the night of the robberies. (*Id.* at 420.) Petitioner also cites to the testimony of Travis

---

[4] The $800 Smith found in the car matched the $800 stolen from Stein Mart. (*Id.* at 616.)

17

1   Bauer, the off-duty policeman who pursued Petitioner's car and saw him flee. (*Id.*

2   at 734).)  It is correct that at the page cited Bauer testified he was unable to pick

3   Petitioner out of a photographic line-up. (*Id.* at 734.)  However, Bauer testified he

4   was able to identify Petitioner from a live line-up, and he was 100% certain of his

5   identification once Petitioner put on a beanie. (*Id.* at 736-37.)  Bauer was also

6   able to independently identify Petitioner in court. (*Id.* at 737.)

7          Petitioner's claim fails.

8          **D.     GROUND FOUR: <u>Consecutive Sentences</u>**

9          A judge cannot "impose a sentence above the statutory maximum based

10   on a fact, other than a prior conviction, not found by a jury or admitted by the

11   defendant." *Cunningham v. California*, 549 U.S. 270, 127 S. Ct. 856, 860, 166 L.

12   Ed. 2d 856 (2007); *United States v. Booker*, 543 U.S. 220, 244, 125 S. Ct. 738,

13   160 L. Ed. 2d 621 (2005); *Blakely v. Washington*, 542 U.S. 296, 301, 124 S. Ct.

14   2531, 159 L. Ed. 2d 403 (2004), citing to *Apprendi v. New Jersey*, 530 U.S. 466,

15   490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000).

16          For Count 1 (attempted murder), the court sentenced Petitioner to 85 years

17   to life.  For Count 2 (assault), the court stayed the imposition of any sentence.

18   (LD 3 at 4204-05.)  For Count 3 (robbery of Guillen), the court sentenced

19   Petitioner to 35 years to life, to be served consecutively to Count 1. (*Id.* at 4206;

20   LD 1 at 71.)  For Count 4 (robbery of Figueroa), the court sentenced Petitioner to

21   35 years to life, to be served consecutively to Count 1. (LD 3 at 4207; LD 1 at

22   71.)  For Count 5 (robbery of Cochran), the court stayed the imposition of

23   sentence because the "act in Count 5 is subsumed in the acts in Count 2 (sic)

24   and Count 3." (LD 3 at 4207.)  "Although [Cochran] had supervisorial control over

25   the two cash registers represented by [Guillen and  Figueroa], and had 3 and 4

26   not been charged, certainly the two robberies could have been charged as

27   robberies against Jill Cochran herself, the victim in Count 5.  But having charged,

28   ///

1 pled, and proved the robberies of Sarah Guillen in Count 3, and Dustin Figueroa

2 in Count 4, the court feels it's the same act and conduct." (*Id.*)

3      The California Court of Appeal, whose decision was the last reasoned

4 decision under *Davis*, concluded that the imposition of consecutive sentences

5 was constitutional under *People v. Black*, 35 Cal. 4th 1238, 1244, 29 Cal. Rptr. 3d

6 740 (2005).  (LD 7 at 45.)

7      The jury convicted Petitioner of three separate crimes (attempted murder

8 and two robberies) involving three separate victims (Burks, Guillen, and

9 Figueroa), which was inherent in the jury's verdicts and did not require

10 impermissible fact-finding by the trial judge.  *See Sandoval v. Campbell*, 2007 WL

11 3274236 (E.D. Cal. 2007);[5] *see also Garcia v. Brown*, 2007 WL 3146962 (N.D.

12 Cal. 2007).[6]

13      Petitioner has not cited any United States Supreme Court holding that

14 consecutive sentences violate a defendant's Sixth Amendment rights.  *Carey*,

15 127 S. Ct. at 654; *see also Hassinger v. Adams*, 243 Fed. Appx. 286, 288 (9th

16 Cir. 2007) ("Hassinger's claim that the trial court erred in imposing his sentences

17 consecutively rather than concurrently does not implicate the constitutional rights

18 ///

19 ///

20 ───────────────

21    [5] In *Sandoval*, the petitioner challenged the state trial court's determination that his offenses "were committed separately or with separate intents and

22 objectives." *Id.* at *10.  The federal district court found that "*Apprendi* and *Blakely* are concerned with findings of fact 'that increase[] the penalty for a crime beyond

23 the prescribed statutory maximum.'"  *Id.* (quoting *Blakely*, 542 U.S. at 301).  "At issue in [*Apprendi* and *Blakely*] is the sentence for a single crime, not the

24 aggregate effect of a defendant's sentences for multiple offenses.  In neither [*Apprendi* or *Blakely*] did the Court rule as to whether a defendant should serve

25 individual sentences concurrently or consecutively."  *Id.* (citations omitted).

26    [6] In *Garcia*, the state trial court imposed consecutive sentences because the crimes "involved separate victims and separate felonies." *Id.* at *10.  The

27 federal district court found that *Blakely* and *Apprendi* were distinguishable because the sentences were "fully authorized by the jury's findings". *Id.* at *11.

28 "[T]he jury found Petitioner guilty beyond a reasonable doubt of the three separate felonies charged." *Id.*

1  involved in *Blakely*"), *cert. denied*, 128 S. Ct. 209 (2008); *Esmay v. Runnels*,

2  2007 WL 3105072 (N.D. Cal. 2007).[7]

3      The state court's decision was not contrary to, or an unreasonable

4  application of, clearly established Federal law.  *See Carey*, 127 S. Ct. at 654.

5  Petitioner's claim fails.

6  **V.**

7  **RECOMMENDATION**

8      For the reasons discussed above, it is recommended that the District Court

9  issue an Order (1) adopting this Report and Recommendation; and (2) directing

10  that judgment be entered denying the Petition and dismissing this action with

11  prejudice.

12

13  DATED: June 2 2008

                            ALICIA G. ROSENBERG

14                              United States Magistrate Judge

---

[7] In *Esmay*, the court found that "[t]he Supreme Court's cases in the *Apprendi* line do not contain any indication that the holdings regarding jury trial rights and proof beyond a reasonable doubt apply to consecutive sentences." *Id.* at *12.  The court also held that "there is no 'clearly established' Supreme Court authority applying *Apprendi* and its Supreme Court progeny to consecutive sentences." *Id.*

20